STATE OF NORTH CAROLINA v. BILL JONES, JR.

No. 9118SC1156

(Filed 18 May 1993)

1. **Evidence and Witnesses § 3110 (NCI4th)— corroborative statements—failure to object to noncorroborative portions— failure to raise impeachment issue—objections waived**

   Defendant waived his argument that the admission of statements given to police officers by three State's witnesses should have been excluded because they did not corroborate the in-court testimony of the witnesses and because they were unduly prejudicial to the defendant, since defendant did not object to the specific portions of the witnesses' statements which purportedly were noncorroborative of their in-court testimony and defendant made no effort to reiterate an impeachment argument at the time the statements were entered into evidence.

   **Am Jur 2d, Trial §§ 411-423.**

2. **Homicide § 299 (NCI4th)— second degree murder—sufficiency of evidence**

   Evidence was sufficient to be submitted to the jury in a second degree murder prosecution where it tended to show that a witness observed defendant attempting to pull something out of his pocket when he was standing behind one victim, but he put his hand back into his pocket when he noticed the witness watching him; when a witness later asked the victims to leave her house, defendant tried to grab one victim but was restrained by the witness; defendant, while alone, followed the victims to the area where their car was parked; he was the only person seen walking from the area shortly after the shots rang out; after the shots were fired, a witness observed defendant outside her kitchen window fumbling with

something; the following day police recovered shells from that area; approximately five minutes after the shots were fired, defendant directed his girlfriend to drive him to his mother's residence where he gave a pistol to his nephew for safekeeping; the bullets extracted from the victims' bodies were consistent with those that could be used in a pistol like defendant's; and medical testimony tended to show that the fatal shots could have been fired at the time defendant was in the area.

**Am Jur 2d, Homicide §§ 53, 245 et seq.**

3. **Criminal Law § 881 (NCI4th) — length of time to reach verdict — no coercion or intimidation by trial court**

The trial court did not err in denying defendant's motion for mistrial based on the extraordinary length of the jury proceedings and the court's instructions to and inquiries of the jury where the jury deliberated for one afternoon and most of another day before the judge inquired as to their progress; the jury indicated they were deadlocked whereupon the judge gave further instructions pursuant to N.C.G.S. § 15A-1235(b); on the next day at noon the judge asked the bailiff to inquire as to whether a deadlock remained, but the jury reported they were making progress; it was only at that point that defendant moved for a mistrial; and there was no evidence of coercion or intimidation by the trial court to influence the jury's progress.

**Am Jur 2d, Trial §§ 1733, 1743, 1744.**

**Time jury may be kept together on disagreement in criminal case. 93 ALR2d 627.**

Appeal by defendant from judgment entered 18 October 1989 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 3 February 1993.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isham B. Hudson, Jr., for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Janine M. Crawley, for defendant appellant.*

STATE v. JONES

[110 N.C. App. 169 (1993)]

COZORT, Judge.

Defendant was convicted of two counts of second-degree murder. He was sentenced to two consecutive life terms in prison. Defendant disputes the following on appeal: (1) the trial court's admission into evidence for corroboration purposes the prior statements given to police by three of the State's witnesses, (2) the trial court's failure to dismiss the charges based on insufficiency of the evidence, and (3) the trial court's denial of defendant's motion for a mistrial because the jury deliberated for an unreasonable amount of time. We conclude the defendant received a fair trial free from prejudicial error.

The State's evidence at trial tended to show that during March of 1989, defendant Bill Jones, Jr., resided with his girlfriend Queen Esther Zimmerman (Queen Esther) in an apartment located in Building #1424 at East Commerce Street in High Point, North Carolina. On the evening of 24 March 1989, Melanie Tucker, a friend of Queen Esther, testified that around 6:00 p.m., Queen Esther picked up Melanie to come over for a visit. The two women went initially to the apartment of Queen Esther's brother, Sam Zimmerman, and then proceeded to Queen Esther's apartment where they watched television. Throughout the evening, various neighbors and friends of Queen Esther would come to the apartment, or "drink house," where they drank alcohol at the mobile bar in the kitchen, socialized, contributed money to pay for the drinks, and then left. The defendant was in and out of the apartment at various times after the women arrived.

At approximately 9:00 p.m., Melanie and Queen Esther ordered a pizza. While waiting for the pizza to be delivered, Melanie sat in the living room and watched television, while Queen Esther entertained her guests in the kitchen. Between 9:45 and 10:00 p.m., Betty Dunlap and her daughter, Cynthia Dunlap, stopped by the apartment and went into the kitchen. Cynthia left the apartment for a few minutes and returned shortly. Melanie indicated that from where she was sitting in the living room, she could see Cynthia and her mother in the kitchen, though they could not see her. Melanie saw the defendant enter the kitchen and stand behind Cynthia. Defendant began to pull something out of his pocket with his hand, but when he saw Melanie looking at him from the living room, he hurriedly left the apartment. Defendant returned to the apartment after a few minutes and spoke privately with Queen

Esther. Queen Esther then asked the Dunlaps to leave. Before Cynthia could leave the apartment, the defendant attempted to grab her, but Queen Esther restrained him by clutching his arms. When Queen Esther asked the defendant why he was behaving so badly, the defendant replied, "in a few days you'll find out why." The defendant left soon after the Dunlaps exited the premises.

As Melanie and Queen Esther began eating the pizza which had been delivered, they heard a "popping" noise outside. Melanie thought the noise came from the opening of Queen Esther's screen door, but Queen Esther went to the door, opened it, and looked outside because she thought she had heard a gunshot. Not long after the noise was heard, the defendant came back into the apartment and went upstairs. Some boys from the neighborhood came inside with the defendant, but did not say much to either Melanie or Queen Esther. Melanie indicated she wanted to go home because she sensed something was wrong, but Queen Esther persuaded her to accompany her and the defendant to defendant's mother's house. The three then got into defendant's car to drive to Sally Jones' home. During the trip, Queen Esther asked the defendant why he "did it," and the defendant said, "Do what?" Queen Esther then asked the defendant, "Why did you shoot those people?" Defendant replied, "What people?" Queen Esther then said, "Those people that you ran out of the house." Melanie testified that she observed defendant removing a gun from his pants and giving the gun to Queen Esther. From Mrs. Jones' house, Melanie called a taxi to take her home.

The bodies of Betty and Cynthia Dunlap were discovered on the morning of 25 March 1989. The women had been shot while sitting in the front seat of their car. Autopsies conducted on both bodies revealed the women died from head injuries caused by the entry of a .38 caliber bullet. Other witnesses who testified for the State placed defendant near the Dunlaps' automobile at the time the shots were fired. Additional testimony tended to show that defendant had brandished a gun that evening and was intoxicated. Defendant presented no evidence.

[1] Defendant first argues on appeal that the admission of statements given to police officers by State's witnesses Melanie Ferree Tucker, Jenny Harris, and Validia Scott should have been excluded because they did not corroborate the in-court testimony of the witnesses and because they were unduly prejudicial to the defendant.

**STATE v. JONES**

[110 N.C. App. 169 (1993)]

The law is well-settled that a witness's prior consistent statement may be admitted into evidence where the statements corroborate the witness's in-court testimony. *State v. Harrison*, 328 N.C. 678, 681, 403 S.E.2d 301, 303 (1991). Prior statements admitted for corroborative purposes cannot be received as substantive evidence. *State v. Stills*, 310 N.C. 410, 415, 312 S.E.2d 443, 447 (1984).

If a prior statement of a witness, offered in corroboration of his testimony at the trial, contains additional evidence going beyond his testimony, the State is not entitled to introduce this "new" evidence under a claim of corroboration. . . . However, if the previous statements offered in corroboration are generally consistent with the witness' testimony, slight variations between them will not render the statements inadmissible. Such variations affect only the credibility of the evidence which is always for the jury.

*State v. Brooks*, 260 N.C. 186, 189, 132 S.E.2d 354, 357 (1963) (citations omitted). "*Brooks* imposes a 'threshold test of substantial similarity.' " *Harrison*, 328 N.C. at 682, 403 S.E.2d at 304 (quoting *State v. Rogers*, 299 N.C. at 601, 264 S.E.2d at 92.) Accordingly, it is clear that "prior consistent statements are admissible even though they contain new or additional information so long as the narration of events is substantially similar to the witness' in-court testimony." *State v. Williamson*, 333 N.C. 128, 136, 423 S.E.2d 766, 770 (1992). Although a statement containing additional facts is not automatically barred from admission, our courts have found error in the admission of statements "when the content went far beyond the witness's in-court testimony." *Harrison*, 328 N.C. at 682, 403 S.E.2d at 304. *See, e.g., State v. Warren*, 289 N.C. 551, 223 S.E.2d 317 (1976); *State v. Moore*, 300 N.C. 694, 268 S.E.2d 196 (1980); *State v. Stills*, 310 N.C. 410, 312 S.E.2d 443 (1984).

Additionally, "[i]n a noncapital case, where portions of a statement corroborate and other portions are incompetent because they do not corroborate, the defendant must specifically object to the incompetent portions." *Harrison*, 328 N.C. at 682, 403 S.E.2d at 304. "Objections to evidence *en masse* will not ordinarily be sustained if any part is competent." *Brooks*, 260 N.C. at 189, 132 S.E.2d at 357. Where a defendant in a noncapital trial makes only a broadside objection to the allegedly incompetent corroborative testimony, the assignment of error is waived. *State v. Benson*, 331 N.C. 537, 549, 417 S.E.2d 756, 764 (1992).

STATE v. JONES

[110 N.C. App. 169 (1993)]

In the present case, the State contends the defendant failed to preserve the assignment of error relating to the corroboration issue because the defendant did not object to the specific portions of the witnesses' statements which purportedly were noncorroborative of their in-court testimony. The record reveals that on the morning the statements were to be offered into evidence, the trial court held a conference in the jury's absence to discuss the defendant's objection to the admission of the statements. The transcript reports the following:

THE COURT: . . . Now, when we recessed yesterday, the State indicated they were going to offer prior statements of the witness [*sic*] Ferree, Validia Scott and Jenny Harris— Melanie Ferree, Validia Scott and Jenny Harris.

Now, Mr. Dockery, you are objecting?

MR. DOCKERY [defense counsel]: That's correct, Your Honor.

THE COURT: All right. Now, we spent considerable time in chambers this morning trying to sort through this and expedite the ultimate hearing of the evidence by the jury.

Now, let me be sure of the basis of your objection. The State indicated that they have tapes of the conversations, which they are prepared to offer, but in an effort to expedite the consideration of such by the jury, they have reduced those tapes to transcript fashion. Now, are you objecting on the basis that the State needs to establish a foundation to admit the tape?

MR. DOCKERY: No, sir.

THE COURT: All right. Now, you're not raising that point?

MR. DOCKERY: No, sir.

THE COURT: You're just objecting generally that what's about to be offered doesn't corroborate the testimony?

MR. DOCKERY: Yes, Your Honor. They—

* * * *

THE COURT: What's been eliminated at least in the Court's opinion are the gross disparities. And I've attempted to rule out any prejudicial matter that appears in those statements.

And counsel for the defendant and the district attorneys have been present and participated in that process. So what we have left is the excised version of the transcript. . . .

\* \* \* \*

. . . You're not objecting to the foundation question? If you object that they have to lay a foundation, we have to go through all that.

MR. DOCKERY: Judge, I recognize that. Let me—my objection is that—if I could just state it for the record?

THE COURT: Yes.

MR. DOCKERY: My objection is what they're trying to do in violation of Rule 403, violation of what the Court said in the Hunt case, is to impeach the testimony of these three witnesses by the use of these prior statements made to the police officers. And the threat is that the jury will not be able to distinguish between impeachment, corroboration, and substantive evidence, and that their offer of this proof is a mere subterfuge to get before the jury that evidence which is otherwise inadmissible. And that's the basis for. my objection. I am not objecting to their failure to establish foundation. . . .

\* \* \* \*

THE COURT: . . . Your point is it shouldn't come in?

MR. DOCKERY: That's correct.

THE COURT: Because it doesn't in fact corroborate?

MR. DOCKERY: And my understanding this Court has gone in great—and allowed me to watch as it did so, allowed me to—

THE COURT: We cut out—a lot of material has been cut out, and I want the record to be clear that a great amount of material was excised and that what we have left is that portion which appears to be in the ballpark at least for consideration as to whether it corroborates, and I think we made an effort to get any gross disparities out and any prejudicial matter.

MR. DOCKERY: And I also understand that I will be allowed to—

THE COURT: So in the Court's opinion if there is any discrepancy it would be minor in nature and not the gross disparities that we did eliminate.

When the statements were offered during the trial proceedings, the following exchange occurred:

MR. DOCKERY: Judge, I think we've already handled the introduction of these, have we not?

THE COURT: Yes. The Court has sustained your objection in part and overruled it in part. And the basis of your objection is on the record. And the Court has determined that certain portions of the tape should not be received before the jury.

The State thereupon separately acknowledged each statement as corroborative testimony and offered the statements into evidence. At the time each statement was received, the trial judge instructed the jury that (1) the statement should only be considered insofar as the jury found it to corroborate the in-court testimony of the witness; and (2) the statement could not be considered as evidence of the truth of the matter because it was not made under oath in that trial proceeding. The trial judge gave a similar instruction during his charge to the jury.

We agree with the State that because defendant did not enter specific objections indicating which remaining parts of the three statements he believed to be noncorroborative, this assignment of error is waived. *See also, State v. Benson*, 331 N.C. at 549-51, 417 S.E.2d at 764-65.

We note that defendant raised issues relating to impeachment in the objection he stated for the record during the conference. However, we need not address the Rule 607 argument, since "[t]he patent nature of the basis of defendant's objection is borne out by the fact that the trial court responded to the objection in terms of the very basis sought by defendant." *Id.* at 549, 417 S.E.2d at 763. The State offered the evidence only as corroborating evidence, and the trial court instructed the jury as to corroboration only. The defendant made no effort to reiterate an impeachment argument at the time the statements were entered into evidence, nor did he address such an argument in his brief filed to this Court. We therefore deem the issue to have been abandoned pursuant to N.C.R. App. P. 28(b)(5).

**[2]** Next, defendant claims the trial court erred by denying defendant's motion to dismiss the two second-degree murder charges at the close of the State's evidence. based on the insufficiency of the evidence.

Our standard of review on a motion to dismiss based on insufficiency of the evidence is the substantial evidence test. The substantial evidence test requires a determination that there is substantial evidence (1) of each essential element of the offense charged, and (2) that defendant is the perpetrator of the offense. *State v. Mercer,* 317 N.C. 87, 96, 343 S.E.2d 885, 890 (1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Lynch,* 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990) (quoting *State .v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)).

> If the evidence is sufficient only to raise·a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be allowed. This is true even though the suspicion so aroused by the evidence is strong.

*Id.* (quoting *State v. Earnhardt,* 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982)). We consider the evidence presented in the light most favorable to the State when determining the sufficiency of the evidence. *Id.* Any contradictions and discrepancies in the evidence are for the jury to resolve, and the evidence admitted favorable to the State, whether competent or incompetent, must be considered by the court in ruling on the motion to dismiss. *Id.* at 216, 393 S.E.2d at 814.

> When as here the motion to dismiss puts into question the sufficiency of circumstantial evidence, the court must decide whether a reasonable inference of the defendant's guilt may be drawn from the circumstances shown. If so the jury must then decide whether the facts establish beyond a reasonable doubt that the defendant is actually guilty.

*Id.* (quoting *State v. Triplett,* 316 N.C. 1, 5, 340 S.E.2d 736, 739 (1986)).

Defendant argues the State produced no direct evidence that defendant murdered Betty and Cynthia Dunlap, and that the State "relied entirely on conjectural and insufficient circumstantial evidence." Defendant points to the lack of any physical evidence linking defendant to the crimes, the State's failure to produce a

murder weapon, the lack of evidence of motive or intent to kill, and the discrepancies in the physical evidence presented, to support his argument. We disagree.

"The test of the sufficiency of the evidence to withstand the motion to dismiss is the same whether the evidence is direct, circumstantial or both." *Earnhardt,* 307 N.C. at 68, 296 S.E.2d at 653. Here, State's witness Melanie Ferree Tucker testified that she noticed defendant attempting to pull something out of his pocket when he was standing behind Cynthia at Queen Esther's, but he put his hand back into his pocket when he noticed Melanie watching him. When Queen Esther later asked Cynthia and her mother to leave, defendant tried grabbing Cynthia, but he was restrained by Queen Esther. Other testimony given by State's witnesses tended to show that defendant, while alone, followed the Dunlaps down to the area where their automobile was parked; he was the only person seen walking from the area shortly after the shots rang out. Jenny Harris testified that after the shots were fired, she observed defendant outside her kitchen window fumbling with something. The following day, the police recovered shells from that area.

Additionally, testimony by various witnesses indicated that defendant was not "acting himself" after the shots were fired when he returned to the drink house. Approximately five minutes after the shots were fired, he directed Queen Esther to drive him to his mother's residence, where he gave a .357 caliber pistol to his nephew for safekeeping. The bullets extracted from the Dunlaps' bodies were consistent with those that can be used in a .357 caliber pistol. The foregoing evidence, together with medical testimony tending to show the fatal shots could have been fired at 10:00 p.m. on the night in question, constitutes substantial evidence to support defendant's conviction on two counts of second-degree murder. As noted above, any contradictions and discrepancies were for the jury to resolve. We therefore conclude the trial court did not err in denying defendant's motion to dismiss.

[3] Finally, defendant contends the trial court erred by denying his motion for a mistrial based on the extraordinary length of the jury proceedings and the likelihood that the jury was coerced to reach a compromise guilty verdict. Jury deliberations commenced on 16 October at approximately 2:00 p.m. and were recessed at or about 5:00 p.m. that day. The jury resumed its deliberations

at 9:30 a.m. on 17 October and deliberations continued until 3:38 p.m. The jury was brought into the courtroom, and the trial judge inquired through its foreman as to the jury's progress. When it appeared to the trial court that the jury was unable to agree and was at that point deadlocked, the trial court gave further instructions pursuant to N.C. Gen. Stat. § 15A-1235(b) (1988). At 12:00 p.m. on 18 October, the trial judge asked the bailiff to inquire as to whether a deadlock remained. The jury foreman reported that the jurors were making progress. Following this inquiry, the defendant moved for a mistrial based on the unreasonable length of the proceedings and that the jurors had been coerced or intimidated into foregoing their individual convictions in order to reach a verdict. The trial court made findings of fact on the matter and denied the motion for a mistrial. The trial judge indicated that if the jury could not reach a unanimous verdict, he would entertain further argument on a motion for a mistrial. Later that same afternoon, the jury reached its verdict.

We find no error in the judge's denial of defendant's motion for a mistrial. N.C. Gen. Stat. § 15A-1235 (1988) provides in part:

> (b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:
>
> (1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
>
> (2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
>
> (3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
>
> (4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
>
> (c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to

require the jury to deliberate for an unreasonable length of time or for unreasonable intervals. ·

(d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.

The granting or denial of a motion for a mistrial is a matter within the sound discretion of the judge, and is reviewable only in a case of a gross abuse of discretion. *State v. Hall*, 73 N.C. App. 101, 325 S.E.2d 639 (1985). In the case at bar, the defendant made his motion for a mistrial *after* the jury indicated to the trial judge that it was approaching a unanimous verdict. The trial court, in denying the mistrial motion, considered the nature of the charges, the evidence presented in the trial, and the time spent deliberating up to that point in proportion to the total length of the trial proceedings. We find the trial court did not abuse its discretion by denying the defendant's mistrial motion based on deadlock. Furthermore, we find no evidence of coercion or intimidation by the trial court to influence the jury's progress. Accordingly, defendant's assignment of error regarding the denial of his motion for a mistrial is· overruled.

No error.

Judges WELLS and LEWIS concur.