STATE OF NORTH CAROLINA v. BUDDY LEE LOCKLEAR

No. COA02-1409

(Filed 5 August 2003)

### 1. Homicide— second-degree murder—sufficiency of evidence—malice—driving while impaired

The evidence of malice was sufficient in a second-degree murder prosecution where defendant was driving with an alcohol concentration of .08 when he collided with another vehicle; a seven-year-old boy in the other vehicle suffocated when the shoulder belt tore his windpipe; and a prior conviction put defendant on notice of the consequences of driving while impaired.

### 2. Homicide— second-degree murder—malice—instructions

The trial court's instruction on malice in a second-degree murder prosecution was correct, taken as a whole, where defendant argued the court should have instructed the jury that it was

STATE v. LOCKLEAR

[159 N.C. App. 588 (2003)]

required to find at least one of the examples of attitude given in the instruction.

### 3. Appeal and Error— preservation of issues—no offer of proof—appeal not considered

Defendant's failure to make an offer of proof resulted in the dismissal of an assignment of error that evidence was wrongly excluded. N.C.G.S. § 8C-1, Rule 103.

### 4. Evidence— prior offense—similar—probative value

The admission of the circumstances around a prior arrest of defendant for driving while impaired was admissible in his current second-degree murder conviction, which also resulted from drunken driving. The prior circumstances were similar enough to have probative value and were admissible to establish malice.

### 5. Evidence— prior offense—not prejudicial—other evidence of guilt

Admission of the circumstances of a prior conviction for driving while impaired did not tilt the scales against defendant in his current second-degree murder prosecution and was not more prejudicial than probative. The State presented sufficient evidence of guilt absent this evidence.

Judge ELMORE dissenting.

Appeal by defendant from judgment entered 9 May 2002 by Judge Jay Hockenbury in Onslow County Superior Court. Heard in the Court of Appeals 11 June 2003.

*Attorney General Roy A. Cooper, by Special Deputy Attorney General Isaac T. Avery, III, and Assistant Attorney General Patricia A. Duffy, for the State.*

*Duncan B. McCormick for defendant appellant.*

TIMMONS-GOODSON, Judge.

Buddy Lee Locklear ("defendant") appeals his convictions of second-degree murder, assault with a deadly weapon inflicting serious injury, driving while impaired, and unsafe movement of his motor vehicle. For the reasons stated herein, we find no error by the trial court.

The State presented evidence at trial tending to show the following: On 2 August 2001, at approximately 10:30 p.m., defendant was

operating a motor vehicle on Piney Green Road when he collided with a vehicle operated by Joseph Matthews, III ("Matthews"). Joseph Matthews, IV ("Joseph"), Matthews's seven- year-old son, died as a result of injuries sustained in the collision. An autopsy examination of Joseph's body revealed that he suffered contusions to the chest, throat and neck areas. Testimony from Dr. Charles L. Garrett, a forensic pathologist, revealed that Joseph's death resulted from him suffocating when the shoulder belt of the motor vehicle restraint system tore his windpipe and prevented air from entering his lungs. Matthews also sustained numerous injuries to his body as a result of the collision.

Officer Kenneth Smith ("Officer Smith") testified that he observed the front end of defendant's vehicle on the top of the automobile operated by Matthews. Upon questioning defendant about the collision, Officer Smith "noticed a strong odor of alcohol coming from [defendant's person]." Officer Smith then examined defendant's physical appearance and further noticed that defendant's "eyes were red, glassy and watery, his speech was slurred, and defendant was unsteady on his feet." Therefore, Officer Smith arrested defendant for driving while impaired.

Upon his arrival at the police station, defendant was administered an Intoxilyzer test which recorded a breath alcohol concentration of 0.08. Additionally, Officer Smith administered several field sobriety tests at the police station. Officer Smith testified that defendant "swayed the entire thirty (30) seconds" and failed to maintain balance on one leg during the test.

On 9 May 2002, defendant was convicted of second-degree murder, assault with a deadly weapon inflicting serious injury, driving while impaired, and unsafe turning of a vehicle. Defendant was sentenced to the following: Two (2) years for driving while impaired and active terms of imprisonment of a minimum term of 125 months to a maximum term of 159 months and ordered to pay $36,000.00 in restitution. Defendant appeals.

---

Defendant presents four issues for review, contending that the trial court erred in (1) denying defendant's motion to dismiss the charge of second-degree murder; (2) instructing the jury on the definition of malice; (3) excluding evidence regarding the seat belt restraint worn by Joseph; and (4) allowing testimony regarding defendant's prior arrest and conviction for driving while impaired.

STATE v. LOCKLEAR

[159 N.C. App. 588 (2003)]

**[1]** We first address the assignment of error in which defendant argues that the trial court erred by denying his motion to dismiss the charge of second-degree murder. Specifically, defendant asserts that there was insufficient evidence to show malice. We disagree.

In considering a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference that may be drawn from the evidence. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). The standard of review for a "motion to dismiss based on insufficiency of the evidence is the substantial evidence test." *State v. Jones*, 110 N.C. App. 169, 177, 429 S.E.2d 597, 602 (1993), *cert. denied*, 336 N.C. 612, 447 S.E.2d 407 (1994). "The substantial evidence test requires a determination that there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *Id*. Substantial evidence is defined as the amount of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

" 'Second-degree murder is defined as the unlawful killing of a human being with malice but without premeditation and deliberation.' " *State v. Rick*, 342 N.C. 91, 98, 463 S.E.2d 182, 186 (1995) (quoting *State v. Phipps*, 331 N.C. 427, 457-58, 418 S.E.2d 178, 194 (1992)). *See also State v. McDonald*, 151 N.C. App. 236, 243, 565 S.E.2d 273, 277, *disc. review denied*, 356 N.C. 310, 570 S.E.2d 892 (2002). Whether the State has carried its burden of proof of malice depends on the factual circumstances of each case. *State v. McBride*, 109 N.C. App. 64, 67, 425 S.E.2d 731, 733 (1993). In *State v. Rich*, 351 N.C. 386, 527 S.E.2d 299 (2000), our Supreme Court addressed the precise issue of malice as raised by defendant. Our Supreme Court adopted the position that, ". . . wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief . . . " are examples, any one of which may provide the malice necessary to convict a defendant of second-degree murder. *Id*. at 391, 527 S.E.2d at 302.

Our Supreme Court has approved the following definition of "deliberately bent on mischief," one of the attitudinal indices of legal malice.

> [The term deliberately bent on mischief] connotes conduct as exhibits conscious indifference to consequences wherein probability of harm to another within the circumference of such con-

duct is reasonably apparent, though no harm to such other is intended. [It] connotes an entire absence of care for the safety of others which exhibits indifference to consequences. It connotes conduct where the actor, having reason to believe his act may injure another, does it, being indifferent to whether it injures or not. It indicates a realization of the imminence of danger, and reckless disregard, complete indifference and unconcern for probable consequences. It connotes conduct where the actor is conscious of his conduct, and conscious of his knowledge of the existing conditions that injury would probably result, and that, with reckless indifference to consequences, the actor consciously and intentionally did some wrongful act to produce injurious result.

*Rich*, 351 N.C. at 394, 527 S.E.2d at 303. Further, our Supreme Court announced that any one of the descriptive phrases provided in the malice instruction helps define malice and does not constitute "elements" of malice. Thus, the jury may infer malice from any one of those attitudinal examples. *Id.* at 393, 527 S.E.2d at 303. It is necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind.

In the instant case, the State's evidence on the issue of malice tended to show that defendant was driving while impaired with an alcohol concentration of 0.08, which is above the legal limit, and that defendant was on notice as to the serious consequences of driving while impaired as a result of his prior driving while impaired conviction which occurred four years earlier. Examining the evidence in the light most favorable to the State, there was substantial evidence presented from which the jury could find malice and each of the other essential elements of second-degree murder. Thus, the trial court did not err in denying defendant's motion to dismiss the charge of second-degree murder.

[2] In the next assignment of error, defendant challenges the trial court's instructions to the jury on the definition of malice. Specifically, defendant argues that the trial court erred in failing to instruct the jury that the jury was required to find at least one of the attitudinal examples to infer the element of malice. We disagree.

"The charge of the court must be read as a whole . . ., in the same connected way that the judge is supposed to have intended it and the

jury to have considered it . . . ." *Rich*, 351 N.C. at 393, 527 S.E.2d at 303 (quoting *State v. Wilson*, 176 N.C. 751, 754-55, 97 S.E. 496, 497 (1918)). A charge to the jury is viewed contextually, and isolated portions will not be held prejudicial when the charge as a whole is correct. *Id.* at 394, 527 S.E.2d at 303. "If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal." *State v. Lee*, 277 N.C. 205, 214, 176 S.E.2d 765, 770 (1970).

After initially charging the jury, the jury deliberated for one hour and returned with a question for the trial court regarding the definition of malice. After a discussion with counsel, the trial court gave the following instruction to the jury:

Malice comprehends not only particular animosity, but also wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty and deliberately bent on mischief. While there may be no intention to injure a particular person it does not mean an actual intent to take human life. It may be inferred or implied instead of positive as when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life.

After deliberating for fifty-five minutes, the jury sent the following written question to the trial court: "we are still stuck on malice, specifically, the words 'and deliberately bent on mischief.' Where did that come from?" The judge then instructed the jury as follows:

My answer to these questions is this, what I have read to you in my written instructions, and also, I have given additional instructions on circumstances of malice in my clarification, which I gave orally to you. These attitudinal circumstances given in the jury instructions for malice serve as descriptive phrases. These words or phrases are each descriptive of the type or types of thought, attitude, or condition of mind sufficient to constitute malice. The descriptive phrases listed in the instructions for malice serve to help define malice for the jury. They do not constitute elements of malice, which is, itself, an element of second-degree murder. And thus, the State need not prove each and every one of these attitudinal examples of malice in order for the jury to infer the element of malice.

The jury instructions made clear that the State need not prove each and every one of the attitudinal examples of malice. Taken as a

whole, the trial court's instruction on "malice" was a correct statement of the law.

[3] In the third assignment of error, defendant contends that the trial court erred in excluding evidence that the deceased victim was improperly restrained by a seat belt. This argument is dismissed. "In order to preserve an argument on appeal which relates to the exclusion of evidence . . . the defendant must make an offer of proof so that the substance and significance of the excluded evidence is in the record." *State v. Ginyard*, 122 N.C. App. 25, 33, 468 S.E.2d 525, 531 (1996). According to North Carolina General Statutes section 8C-1, Rule 103, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." N.C. Gen. Stat. § 8C-1, Rule 103 (2001).

In the instant case, the record reveals that defendant failed to produce any witnesses or submit affidavits regarding the seat belt restraint. Defendant failed to make an offer of proof by a competent witness that Joseph would not have suffered a fatal injury if he had been restrained in a different manner. Accordingly, this assignment of error is overruled.

[4] In the last assignment of error, defendant argues that the trial court erred in allowing testimony regarding the facts and circumstances surrounding his prior arrest and conviction for driving while impaired. Specifically, defendant contends that testimony from the arresting officer, Paul Ehrler, ("Officer Ehrler") regarding the events of defendant's 1996 arrest and subsequent conviction, were not probative as to the issue of malice and should have been excluded. We disagree.

Defendant concedes in his brief that the State in its case-in-chief may properly present evidence of a prior conviction for driving while impaired for the purpose of showing malice. Defendant also recognizes that the events and circumstances of a prior driving while impaired arrest may also be admitted if the events are sufficiently similar to the circumstances at issue. The point on which defendant disagrees is whether the facts and circumstances of his prior driving while impaired arrest are sufficiently similar to the present case so as to be admissible.

Evidence of prior convictions may have probative value as long as the incidents are relevant to any fact or issue other than to show character of the accused. Rule 404(b) of the North Carolina Rules of Evidence does not require that these prior incidents be exactly the same in order to have probative value. *See State v. Sneeden*, 108 N.C. App. 506, 509-10, 424 S.E.2d 449, 451 (1993), *affirmed*, 336 N.C. 482, 444 S.E.2d 218 (1994). Further, the similarities between the circumstances need not rise to the level of the unique and bizarre but simply "must tend to support a reasonable inference that the same person committed both the earlier and later acts." *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991). The evidence reveals several significant similarities between the prior driving while impaired charge and the case at issue. Officer Ehrler's testimony regarding defendant's 1996 arrest revealed that defendant was operating a motor vehicle; had a blood alcohol level above the legal limit; and while operating his vehicle under the influence of alcohol, defendant made an unsafe traffic turn that resulted in a collision. Officer Ehrler testified that defendant performed poorly on sobriety tests and that he resisted arrest by twisting the officer's wrist and cursing the officer. In the present case, the evidence tended to show that while driving with a blood alcohol content of .08, defendant caused a traffic accident by making an improper turn into the path of Mathews's car. We conclude that the circumstances of the 1996 driving while impaired arrest were sufficiently similar so as to have probative value.

[5] Defendant next argues that even if the details surrounding his 1996 driving while impaired arrest have "some limited probative value," the probative value of the evidence is outweighed by the danger of prejudice. Defendant urges this Court to vacate the second-degree murder conviction because of the prejudicial nature of the evidence of defendant's combativeness with the arresting officer during his 1996 arrest. "A defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." N.C. Gen. Stat. §15A-1443(a) (2001). Assuming *arguendo*, that it was error to admit testimony that defendant resisted arrest at his prior driving while impaired charge, we conclude that the admission of this evidence was not such that the jury would have reached a different result. *See State v. Bruton*, 344 N.C. 381, 387, 474 S.E.2d 336, 341 (1996) (concluding that in light of evidence of defendant's guilt, there was no basis for determining that a different result would have been reached). The testimony of defendant's actions in resisting his 1996 arrest did not rise to the level of altering the balance of the scales

against defendant in light of all the evidence. Absent the evidence of resisting arrest, the State presented as a whole sufficient evidence that defendant was guilty of second-degree murder. Joseph died as a result of defendant's unsafe operation of his vehicle while driving with a blood alcohol concentration in excess of the legal limit. The second-degree murder charge arose five years after defendant's arrest and conviction for another driving while impaired charge. The prior driving while impaired arrest and conviction should have alerted him to the hazards of driving while impaired.

Therefore, evidence of the events surrounding defendant's 1996 driving while impaired arrest and conviction was admissible to establish malice. We therefore hold that the trial court did not err in admitting the evidence of the events surrounding defendant's prior arrest and conviction for driving while impaired.

For the reasons stated herein, we conclude that the trial court committed no error.

No error.

Judge HUNTER concurs.

Judge ELMORE dissents.

ELMORE, Judge, dissenting.

I disagree with the majority on the last assignment of error concerning the testimony of Officer Ehrler of the circumstances of defendant's prior arrest. The admission of the Officer's testimony was in error, and that error was prejudicial.

At trial, Officer Ehrler testified that in May of 1996 he observed the defendant run a red light and weave in the lane, and pulled the defendant over. Officer Ehrler went on to testify in detail of the defendant's demeanor and actions throughout the course of the traffic stop, field sobriety tests, and subsequent arrest. Officer Ehrler testified in part:

Q: So at that point [after field sobriety tests] did you place him under arrest?

A: Yes, I did.

Q: Did you have any difficulty placing him under arrest?

A: I put one handcuff on him, yes, I did, and he turned around and said "what are you doing?" and grabbed my wrist and started twisting it. He started cussing. Luckily, another officer arrived and we had to wrestle him a little bit, not too much, but a little bit to get him into cuffs.

In transport to the police department, according to Officer Ehrler's testimony, defendant was "[c]ussing. Screaming. One minute he begged me to let him go, next thing he'd be cussing me, told me how horrible a police officer I am." In response to questioning by the trial court, the officer noted that defendant had not been speeding, had not left his lane of travel and gone into another lane, and had no trouble producing his license and registration.

Defendant assigns error to the admission of this testimony concerning the details surrounding the 1996 arrest as lacking probative value, and also any probative value would be substantially outweighed by danger of unfair prejudice to the defendant.

State v. Jones, 347 N.C. 193, 213, 491 S.E.2d 641, 653 (1997), provides that an evidentiary ruling by a lower court should only be overturned if the decision was so arbitrary as to be irrational. If there was any rational basis for admitting this evidence, the ruling must stand. Although evidence of prior crimes, wrongs or acts by a defendant is allowed into evidence for purposes of proving malice under Rule 404(b), the admissibility is guided by the constraints of similarity and temporal proximity. State v. Artis, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), judgment vacated on other grounds, 494 U.S. 1023, 110 S. Ct. 1466, 108 L. Ed. 2d 604 (1990), on remand, 329 N.C. 679, 406 S.E.2d 827 (1991). "When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking[.]" Id. For example, the evidence is properly admitted when the prior offense and the offense charged are identical. See e.g. State v. McAllister, 138 N.C. App. 252, 530 S.E.2d 859 (2000). Details of the arrest are admissible for the purpose of proving malice only when they have a tendency to demonstrate the defendant knew his conduct was "reckless and inherently dangerous to human life." State v. Jones, 353 N.C. 159, 173, 538 S.E.2d 917, 928 (2000). I disagree with the majority that this officer's testimony had any tendency to prove malice. That defendant had been stopped before in a traffic stop with no other cars involved does not tend to

prove that he knew in the incident before us that his actions were inherently dangerous.

Although defendant was intoxicated in both cases, neither the details of how the 1996 accident occurred, the facts surrounding his field sobriety tests nor the fact that he resisted arrest are similar or relevant to the case at bar. None of these details have any tendency to demonstrate that defendant was aware that his conduct leading up to the collision at issue was reckless and inherently dangerous to human life. The testimony only tended to make the defendant look uncooperative and belligerent with officials, which had not been the case in the incident at issue here. This evidence was more prejudicial than it was probative. Given all the circumstances of the case, this evidence is of a nature likely to prejudice the jury's consideration. I would vacate the judgment and remand for a new trial.