IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 23-562

Filed 20 February 2024

Alamance County, Nos. 21 CRS 290, 21 CRS 51851

STATE OF NORTH CAROLINA

v.

TIMOTHY LEE SIMPSON, II

Appeal by Defendant from judgment entered 1 November 2022 by Judge Andrew Hanford in Alamance County Superior Court. Heard in the Court of Appeals 9 January 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Scott T. Slusser, for the State.*

*Jackie Willingham, for Defendant.*

WOOD, Judge.

Timothy Simpson ("Defendant") appeals a judgment entered against him for convictions of driving while impaired ("DWI"), resisting a public officer, and being intoxicated and disruptive. After careful review, we hold the trial court committed no error in excusing potential jurors for cause and in denying Defendant's motion to dismiss his DWI charge. However, the trial court miscalculated Defendant's sentence for the resisting a public officer and intoxicated and disruptive offenses. We remand only for re-sentencing on those two charges.

## I.     Factual and Procedural Background

At 2:30 a.m., on the morning of 18 April 2021, Corporals Strader and Acosta of the Graham Police Department observed Defendant ducking behind a building as they patrolled Main Street.  The Officers noticed a wrecked vehicle in the middle of the road, about thirty yards from where Defendant was attempting to hide.  The officers approached the vehicle and found the car abandoned with no one inside.  The car appeared to have significant damage to the front left quarter panel.  After observing a damaged tree in a nearby McDonald's parking lot and noting dirt and fresh gouges in the road, Officers deduced the vehicle had hit the tree and the driver had attempted to drive away after the collision.  During their investigation, they observed Defendant quickly walking away from the crash site and noted that there was no one else in the vicinity other than Defendant.  Believing Defendant was involved in the collision, Corporal Dunnigan followed Defendant.

Corporal Dunnigan pulled up to Cook Out as Defendant waited in the walk-up line to order.  Before approaching Defendant, Corporal Dunnigan determined the registered owner of the crashed vehicle was Kelvin Washington.  Corporal Dunnigan approached Defendant and said the name of the registered owner aloud, to which Defendant replied that was not his name.  While speaking with Corporal Dunnigan, Defendant denied driving the wrecked vehicle and shouted profanities at the officer.  When other officers approached Defendant, they noticed he smelled of alcohol, he slurred his words, his eyes were red and glassy, and he was unsteady on his feet.

Officers also noticed Defendant had a bump and cut on his forehead which they believed to be consistent with the car crash. After Defendant became uncooperative and would not provide information about his movements, the officers placed him under arrest. Defendant resisted being placed in the patrol car and it required several officers to make him comply. At the jail, Defendant refused to exit the patrol car for several minutes and was ultimately found in contempt by the magistrate.

While searching Defendant at the jail, officers located a car key fob in his pocket. Officer Pollock took the key, went back to the damaged vehicle, used the fob to open the vehicle doors, and determined that the key belonged to the wrecked vehicle. At the police station, Defendant refused to submit to a breathalyzer.

On 18 April 2021 Defendant was charged with driving while impaired, resisting a public officer, being intoxicated and disruptive, and hit and run from the scene of an accident. On 2 June 2022, Defendant was found guilty during a District Court bench trial. Defendant entered a notice of appeal to superior court where he requested a jury trial.

On 31 October 2022, jury selection began. The trial court, own its own initiative, excused two jurors for cause during *voir dire*.

In the first *voir dire*, the following exchange occurred:

> [Prosecutor]: Okay. And Ms. Hornbuckle, you
> raised your hand. What can you tell me about your
> interactions you've had with law enforcement?
>
> PROSPECTIVE JUROR HORNBUCKLE: Just recently,

two weeks ago maybe, we had to call the Sheriff's Department out there because where we live is in -- it's basically nowhere in Snow Camp. The neighbor across the street, he has a lot of mental issues going on. He threw a hammer at the neighbor and was threatening to kill her. So, of course, me and my husband, we run up there to kind of protect her from him. And in turn, this guy threatens to kill all of us, including our families and our small children. Grandkids. So instead of the sheriff arresting this guy, even though there's like four witnesses to this incident, they told us that they couldn't do anything about it. They left this man in his trailer. Who also -- we had to call the sheriffs back out there a second time that night because we didn't have video of the incident. So I'm not real partial to the Sheriff's Department.

[Prosecutor]: Okay. Do you feel that -- now, the case here involves the Graham Police Department. Do you feel that your feelings with the Sheriff's Department are going to effect the way you feel about all police?

PROSPECTIVE JUROR HORNBUCKLE: Honesty, sadly, yes, I do. MS. JENNINGS: Can you tell me –

PROSPECTIVE JUROR HORNBUCKLE: Because this man threatened to kill my entire family that night, along with my elderly neighbor who we are all on guard now there where we live. All the time.

THE COURT: Ms. Hornbuckle, with the thanks of the Court, in my discretion I'm going to excuse you from this case and you're free to go.

PROSPECTIVE JUROR HORNBUCKLE: Sorry. That is how I feel.

THE COURT: It's okay. This is exactly the purpose of this process and you have done nothing wrong and thank you for telling us how you feel.

Later, the prosecutor asked potential jurors to consider if they had ever "had a

close friend or relative that has been charged with a driving while impaired" and whether they felt the individual "was treated fairly through that process." Prospective Juror Diggs raised his hand to answer the questions and the following *voir dire* took place:

> PROSPECTIVE JUROR DIGGS: Yeah. I had a couple of friends get DUIs. We all played football and we go to the stadium on the weekend and tail gate. So one got a DUI one week. One got a DUI on the next week. Not saying that he was drunk but I wasn't there. I didn't do a test on him. But at the same time, where I live in Alamance County you see it from two different perspectives. All right. You going to one neighborhood every weekend but you're not going to the other neighborhood. So, you know -- and I've always told my kids when they were growing up and they were in high school, if you driving back in Alamance County, if you outside Alamance County after 11:00 or 12:00, stay where you at. Because nine times out of ten you going to get pulled over. Whether you're doing something right or wrong, stay w[h]ere you at. Call me and let me know. So I got a different perspective on it.
>
> [Prosecutor]: Okay.
>
> PROSPECTIVE JUROR DIGGS: And I see it every weekend where I live at.
>
> [Prosecutor]: So where do you live? You don't have to tell me exact address but what part of the county?
>
> PROSPECTIVE JUROR DIGGS: I live in Burlington.
>
> [Prosecutor]: In Burlington. Okay. And it seems that you have some pretty strong feelings with that.
>
> PROSPECTIVE JUROR DIGGS: I got strong feelings because I work on the job for 18 and a half years. I had perfect attendance for 16 years. I go to work at 3:00 in the morning. My supervisor said, oh, Billy, we don't need you.

Come back at 7:00. So I'm coming back through Graham and I get pulled over. I didn't do anything. I just went to work, on the way back home. Got to be back at 7:00. So, you know, I asked the officer, what did I do wrong. I didn't rape, rob, shoot anybody. What is the problem?

[Prosecutor]: If you don't mind my asking how –

PROSPECTIVE JUROR DIGGS: Come to find out, he gonna tell me my license plate light was out. I stopped going to work. That was the extra money for me and my family. I stopped going to work at 3:00 in the morning because I didn't want to be harassed anymore.

[Prosecutor]: So it sounds like you have some strong feelings towards law enforcement?

PROSPECTIVE JUROR DIGGS: Oh, yeah.

[Prosecutor]: So it sounds like, would you find it difficult to be fair and impartial to –

PROSPECTIVE JUROR DIGGS: I got strong feelings because where I live at the law is not applied equally.

THE COURT: Mr. Diggs, with the thanks of the Court, I appreciate your willingness to share that with us and I'm going to excuse you off this jury. You're free to go.

Defendant's trial counsel did not object to either one of these dismissals during jury selection. Neither Defendant nor the State used all of their peremptory challenges, and both parties were satisfied with the empaneled jury.

Prior to the jury trial, Defendant pleaded guilty to the charges of resisting an officer and being intoxicated and disruptive. Sentencing for those charges was deferred until after the jury trial. At the close of the State's evidence, the trial court dismissed the charge of hit and run for insufficient evidence. On 1 November 2022,

the jury found Defendant guilty of driving while impaired. The trial court sentenced Defendant to an aggravated Level I DWI for a term of 36 months' imprisonment and imposed a 120-day active sentence for the resisting an officer and intoxicated and disruptive charges which were to run concurrently with the DWI sentence. Defendant filed a notice of appeal on 9 November 2022.

## II. Analysis

Defendant raises three issues on appeal. Each will be addressed in turn.

## A. Jury Selection

Defendant first argues the trial court erred by excusing two jurors who "expressed concerns about police activity without cause when potential jurors did not say they could not be fair and impartial, without a challenge for cause by either party, or without giving either party the opportunity to rehabilitate the jurors." Defendant concedes his trial counsel did not object to the trial court's dismissal of the jurors or their answers to the prosecutor's questions concerning law enforcement. Defendant requests this Court to exercise its inherent authority pursuant to N.C. R. App. P. 2. Under Rule 2 this Court can suspend the rules of Appellate Procedure "[t]o prevent manifest injustice to a party, or to expedite decision in the public interests." N.C. R. App. P. 2. Defendant directs our attention to *State v. Campbell* where our Supreme Court invoked Rule 2 to review issues arising during *voir dire*. 280 N.C. App. 83, 87, 866 S.E.2d 325, 328 (2021). We are persuaded by this argument and invoke Rule 2 to review the merits of this issue.

"Under both the Federal Constitution and the North Carolina Constitution, every criminal defendant has the right to be tried by a fair and impartial jury." *State v. Crump*, 376 N.C. 375, 381, 851 S.E.2d 904, 910 (2020); U.S. Const. amend VI; N.C. Const. art. I, § 24. A right to a fair trial protects the rights of an accused person to be "entitled to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm." *State v. Carter*, 233 N.C. 581, 583, 65 S.E.2d 9, 10 (1951). "The responsibility for enforcing this right necessarily rests upon the trial judge. He should conduct himself with the utmost caution in order that the right of the accused to a fair trial may not be nullified by an act of his." *Id.*

"The trial judge has broad discretion to see that a competent, fair and impartial jury is impaneled and rulings of the trial judge in this regard will not be reversed absent a showing of abuse of discretion." *State v. Phillips*, 300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980) (citation omitted). An abuse of discretion is established upon a showing that the trial court's actions were "manifestly unsupported by reason" and "so arbitrary that [they] could not have been the result of a reasoned decision." *State v. Cummings*, 361 N.C. 438, 490, 648 S.E.2d 788, 794 (2007). "The duty of the appellate court is not to micromanage the jury selection process. Indeed, an appellate court should reverse only in the event that the decision of the trial court is so arbitrary that it is void of reason." *Cummings*, 361 N.C. at 449, 648 S.E.2d at 795. Furthermore, "[d]eterminations of whether a juror would follow the law as instructed are best left to the trial judge, who is actually present during *voir dire* and has an

opportunity to question the prospective juror." *Id.* at 450, 648 S.E.2d at 796. On this issue, our United States Supreme Court noted "[d]eference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Uttecht v. Brown*, 551 U.S. 1, 9, 127 S. Ct. 2218, 2224 (2007) (citations omitted).

A trial court, in exercising its discretion, "may excuse a juror without challenge by any party if he determines that grounds for challenge for cause are present." N.C. Gen. Stat. § 15A-1211(d). As such, a trial court may excuse for cause any prospective juror who the court believes "is unable to render a fair and impartial verdict" regardless of whether one of the parties challenges the juror. *State v. Carter*, 338 N.C. 569, 583, 451 S.E.2d 157, 165 (1994); *see also* N.C. Gen. Stat. § 15A-1212(9).

According to Defendant, the trial court erred in dismissing the two jurors during *voir dire* because by their dismissals, the trial court "set a tone of intolerance for jurors to express and hold their own beliefs." Defendant argues while both jurors' answers may have "demonstrated negative feelings about prior interactions with law enforcement," there was no indication their prior negative experiences with law enforcement would have prevented or substantially impaired the performance of their duties as jurors. Furthermore, Defendant argues the court sheltered the jurors "who had positive, personal relationships with or expressed positive opinions of law enforcement officers" by asking rehabilitating questions and allowing "the district

attorney to rehabilitate these jurors, whereas the defense was not allowed to question prospective jurors regarding their ability to set aside any prior negative experiences or opinions of law enforcement." We disagree.

During questioning, prospective jurors Hornbuckle and Diggs both expressed strong emotions against law enforcement based upon their personal experiences with officers. When asked by the prosecutor if prospective juror Hornbuckle's negative interaction with a Sheriff's department would affect her feelings "about all police," Juror Hornbuckle responded "[h]onesty, sadly, yes, I do." Similarly, when Prospective Juror Diggs was asked about prior experiences regarding driving while impaired, he discussed his negative prior experience with local law enforcement and stated he had strong feelings towards law enforcement. When asked by the prosecutor if it would be difficult to be fair and impartial in the case, Prospective Juror Diggs interjected in the middle of her question, "I got strong feelings because where I live at the law is not applied equally." After *voir dire*, the trial court, in its discretion, excused for cause the two individuals because of strong feelings and bias against law enforcement which would affect their ability "to render a fair and impartial verdict." *Carter*, 338 N.C. at 583, 451 S.E.2d at 165.

We also agree with the State that Defendant "fails to show that an unfair jury was empaneled in this case." As it is the right and duty of the court to see that a fair and impartial jury is empaneled, "even the erroneous allowance of an improper challenge for cause does not entitle the adverse party to a new trial, so long as only

those who are competent and qualified to serve are actually empaneled upon the jury which tried his case." *State v. Harris*, 283 N.C. 46, 48, 194 S.E.2d 796, 798 (1973) (citation omitted).

Here, Defendant expressed his satisfaction with the empaneled jury to the trial court. Both Defendant and the State were granted every opportunity to *voir dire* the prospective jurors and exercise peremptory challenges. Defendant used four of his six peremptory challenges, while the State used two of its six peremptory challenges. Because Defendant did not use all of his peremptory challenges, "he cannot say he was forced to accept an undesirable juror." *State v. Hood*, 273 N.C. App. 348, 352, 848 S.E.2d 515, 519 (2020). The trial court did not abuse its discretion in excusing the two prospective jurors for cause. Defendant's argument is overruled.

## B. Motion to Dismiss

Next, Defendant argues the trial court erred in denying his motion to dismiss the DWI charge. According to Defendant, there is insufficient evidence to support the DWI conviction because "there is no evidence when the car was operated or that [he] operated the vehicle." We are unpersuaded by Defendant's argument.

The denial of a motion to dismiss for insufficient evidence is reviewed *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). Upon a motion to dismiss, the question for the Court is whether "there is substantial evidence (1) of each element of the offense charged, and (2) that defendant is the perpetrator of the offense." *State v. Jones*, 110 N.C. App. 169, 177, 429 S.E.2d 597, 602 (1993).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

In ruling on a motion to dismiss, the trial court considers all admitted evidence, whether competent or incompetent, "in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). It is immaterial whether the evidence is direct, circumstantial, or both. *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). If substantial evidence exists supporting a finding that the offense charged was committed by the defendant, the case must be left for the jury. *State v. Davis*, 325 N.C. 693, 696–97, 386 S.E.2d 187, 189 (1989).

To be found guilty of DWI, the State must produce proof beyond a reasonable doubt of three elements: (1) that an individual drove a vehicle (2) upon any highway, street or public vehicular area, (3) while under the influence of an impairing substance. *See* N.C. Gen. Stat. § 20-138.1(a)(1). The issue in this matter is whether the State provided substantial evidence that Defendant drove the vehicle in question while under the influence of an impairing substance.

Although there was no eyewitness testimony that Defendant was seen driving the vehicle at 2:30 a.m. on the day in question, there was circumstantial evidence that Defendant was the driver of the vehicle. Officers came upon Defendant hiding behind a building about thirty yards away from the crashed vehicle. No other

individuals were located by police near the collision scene. Officers also observed that the vehicle had been abandoned in the middle of the road and determined that the crash had occurred recently since the damage to the nearby tree and the rut marks in the road were described as "fresh." The State argues "[i]t is certainly reasonable to infer that a vehicle sitting in the middle of the road was recently wrecked as it would impede traffic or law enforcement would have otherwise been informed." We agree.

Additionally, circumstantial evidence indicates Defendant was impaired at the time the vehicle crashed. Suspecting his involvement, officers followed Defendant as he walked away from the wrecked vehicle. Defendant was approached at Cook Out and spoke with several officers who observed that he smelled of alcohol, had red glassy eyes, had slurred speech, was unsteady on his feet, and became combative and belligerent during their exchange. Furthermore, Defendant continued to be disruptive as he was being placed into the patrol vehicle and later was held in contempt by the magistrate due to his belligerent behavior.

Finally, there was evidence that Defendant drove the wrecked vehicle as officers discovered the keys to the car in his pocket when he was searched at the jail. Although Defendant denied driving the vehicle, the keys to the wrecked vehicle were found in his pocket; Defendant was the only person located near the vehicle when officers discovered the wreckage at 2:30 a.m.; officers noted Defendant was trying to avoid being seen; officers observed a fresh cut on his forehead; and officers observed

Defendant exhibiting symptoms of intoxication. Considered in the light most favorable to the State, there was substantial evidence to support the trial court's denial of Defendant's motion to dismiss the DWI charge.

## C. Sentencing

Defendant argues the trial court erred in sentencing Defendant to 120 days' confinement on the (1) resisting a public officer and (2) intoxicated and disruptive charges when the maximum, combined sentence allowed by law is 80 days. The State concedes the trial court erred and that Defendant should have been sentenced to 80 days for the two misdemeanor charges.

Resisting a public officer is a class 2 misdemeanor and carries a maximum possible sentence of 60 days active. N.C. Gen. Stat. § 15A-1340.23(c). Intoxicated and disruptive behavior is a class 3 misdemeanor with a maximum possible sentence of 20 days active. N.C. Gen. Stat. § 14-444; § 15A-1340.23(c). Together, the maximum combined sentence for both charges is 80 days. Additionally, Defendant's plea transcript acknowledges the maximum sentence for the charges is 80 days. During sentencing, the trial court miscalculated the maximum sentence and mistakenly sentenced Defendant to 120 days to run concurrently with the 36-month active sentence for the DWI charge. Therefore, we remand to the trial court for resentencing on the two misdemeanor charges.

### III.    Conclusion

For the foregoing reasons, we hold the trial court did not err in excusing

potential jurors for cause and in denying Defendant's motion to dismiss the DWI charge. We remand to the trial court for the sole purpose of resentencing on the two misdemeanor charges.

NO ERROR; REMANDED FOR RESENTENCING.

Judges FLOOD and STADING concur.