An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-360
NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

STATE OF NORTH CAROLINA

v.

Wake County
No. 11 CRS 214093

FLOYD JAMAR JOHNSON,
        Defendant.

Appeal by defendant from judgment entered 16 May 2012 by Judge Michael J. O'Foghludha in Wake County Superior Court. Heard in the Court of Appeals 23 September 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas D. Henry, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Jon H. Hunt, for defendant-appellant.*

GEER, Judge.

Defendant Floyd Jamar Johnson appeals from his conviction of assault with a deadly weapon with the intent to kill, first degree burglary, misdemeanor child abuse, and misdemeanor assault by pointing a gun. On appeal, defendant primarily argues that the trial court committed plain error by admitting testimony recounting unsworn statements of a witness taken on

the night of the alleged crime when, defendant asserts, the statements did not corroborate the witness' in-court testimony. Although the unsworn statement differed slightly from the in-court testimony of the witness, both accounts were substantially the same, and the unsworn statement tended to add weight and credibility to the witness' account. The testimony regarding the unsworn statement was, therefore, admissible corroborative evidence.

## Facts

The State's evidence tended to show the following facts. Defendant was married to Saroya Johnson with whom he had two children. In February 2011, their marriage was experiencing difficulties, and Ms. Johnson moved out of the marital home. She began a relationship with Floyd Farrow, her co-worker.

In March 2011, defendant learned of the relationship between Ms. Johnson and Mr. Farrow. One evening in April 2011, defendant waited outside Ms. Johnson's home and upon seeing Ms. Johnson return to the house with Mr. Farrow, charged Mr. Farrow and took swings at him. Mr. Farrow responded by rushing to his truck to get his gun. The situation de-escalated when Mr. Farrow realized who defendant was and asked defendant to talk "man to man." Defendant agreed and asked Mr. Farrow to put away his gun, which he did. Mr. Farrow offered to "back off" from

Ms. Johnson if defendant wanted to make their relationship work, but defendant replied "Nah, nah, she's yours." The two men shook hands before defendant left. Between April and June 2011, defendant had no further contact with Mr. Farrow.

On the night of 20 June 2011, defendant was driving back to Raleigh from Elizabeth City with his nine-year-old son. Over the weekend, defendant had called Ms. Johnson several times, and the final call had ended abruptly when Ms. Johnson's phone went dead. Ms. Johnson was staying at Mr. Farrow's apartment that night. Around 12:15 a.m., defendant knocked on Mr. Farrow's apartment door, and Mr. Farrow's roommate, Kenneth Hamlin, answered. Defendant asked if Mr. Farrow was at home. Mr. Hamlin was unsure, so he knocked on Mr. Farrow's bedroom door. When he did not get a response, he told defendant that Mr. Farrow was not home. Defendant asked, "So that's not his truck outside?" Mr. Hamlin replied, "I guess so, man, but nobody came to his door so nobody's there." When defendant asked whether his wife was inside, Mr. Hamlin replied that he did not know. Sensing that defendant was upset, Mr. Hamlin then tried to close the door. However, defendant blocked the door and entered the apartment with his gun pointed at Mr. Hamlin, saying, "Where the fuck are they?"

Meanwhile, Mr. Farrow and Ms. Johnson had heard the knock at the door from inside the bedroom. Ms. Johnson recognized defendant's voice and told Mr. Farrow "[t]hat's Jamar." Mr. Farrow called 911 and grabbed his gun because he "knew nothing good was going to happen." Ms. Johnson retreated to the bathroom.

Mr. Farrow then opened his bedroom door to peek out and found defendant standing in front of the bedroom. He attempted to shut the door on defendant who started pushing on the door from the hallway, trying to gain entry into the bedroom. Mr. Farrow saw defendant's arm come around the door and saw that defendant had a gun. Mr. Farrow dropped to the ground, aimed his gun at defendant, and fired five shots at defendant, thinking "[i]t's either him or me."

Defendant was hit in the neck and chest. He fired one shot from his gun, but it did not strike Mr. Farrow. Police found five 40 caliber shells and one 45 caliber shell at the scene. After the shots were fired and defendant lay incapacitated on the floor, Mr. Farrow took control of both guns, released the magazine from his gun, unloaded defendant's gun, placed them both on the kitchen counter, and redialed the police. Ms. Johnson heard her nine-year-old son screaming outside the apartment and ran to comfort him.

On 12 September 2011, defendant was indicted for assault with a deadly weapon with intent to kill, first degree burglary, misdemeanor child abuse, and misdemeanor assault by pointing a gun. The jury found defendant guilty of all the indicted offenses. The trial court consolidated the offenses for sentencing and sentenced defendant to one presumptive-range term of 60 to 81 months imprisonment. Defendant filed a written notice of appeal and a petition for writ of certiorari.

## Discussion

We first address this Court's jurisdiction to hear this appeal. Defendant filed a written pro se notice of appeal on 31 May 2012, 15 days after judgment was entered. The notice of appeal was filed one day late. *See* N.C.R. App. P. 4(a), (b). Our Supreme Court has held that a jurisdictional default, such as a failure to comply with Rule 4 of the Rules of Appellate Procedure, "precludes the appellate court from acting in any manner other than to dismiss the appeal." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008). Because defendant's notice of appeal was untimely, we must dismiss his appeal. Defendant has, however, filed a petition for writ of certiorari pursuant to Rule 21(a)(1) of the

Rules of Appellate Procedure. We exercise our discretion to allow the petition and address the merits of this appeal.[1]

I

Defendant first argues that the trial court erred by admitting testimony regarding prior unsworn statements of Ms. Johnson to the police on the night of the incident when those statements did not corroborate Ms. Johnson's testimony at trial. Because defendant did not object to the admission of this evidence at trial, we review for plain error. Our Supreme Court has explained:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice -- that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations and quotation marks omitted).

"A witness's prior consistent statements may be admitted to corroborate the witness's courtroom testimony." *State v.*

---

[1]We note that the State has not responded to defendant's petition and did not move to dismiss the appeal.

*Harrison*, 328 N.C. 678, 681, 403 S.E.2d 301, 303 (1991). An out-of-court statement will not be admitted, however, if it is inconsistent with or contradicts the declarant's substantive testimony at trial. *State v. Stills*, 310 N.C. 410, 416, 312 S.E.2d 443, 447 (1984). Moreover, if the statement "'contains additional evidence going beyond [the declarant's] testimony, the State is not entitled to introduce the "new" evidence under a claim of corroboration . . . .'" *State v. Warren*, 289 N.C. 551, 557, 223 S.E.2d 317, 321 (1976) (quoting *State v. Brooks*, 260 N.C. 186, 189, 132 S.E.2d 354, 356 (1963)).

On the other hand, "if the testimony offered in corroboration is generally consistent with the witness's testimony, slight variations will not render it inadmissible." *Id.* Where the testimony is substantially similar, "[slight] variations affect only the credibility of the evidence which is always for the jury." *Id.* Moreover, "[n]ew information contained within the witness' prior statement, but not referred to in his trial testimony, may also be admitted as corroborative evidence if it tends to add weight or credibility to that testimony." *State v. Garcell*, 363 N.C. 10, 40, 678 S.E.2d 618, 637 (2009) (quoting *State v. Davis*, 349 N.C. 1, 28, 506 S.E.2d 455, 469-70 (1998)).

At trial, Ms. Johnson testified to the following:

Q. When you looked out of the bathroom, what did you see?

A. I just seen him coming in the door.

Q. When you say him, who are you talking about?

A. The defendant, Floyd.

Q. You saw him come in the door? Of what door?

A. Orlando's bedroom door.

Q. You saw him come into the bedroom door?

A. Uh-huh.

Q. Did you see anything prior to that?

A. No.

Q. And what was the next thing that you -- did you see whether or not the defendant had anything in his hands?

A. I did see him, like, with a gun in his hand.

Q. I can't hear you.

A. I seen him with a gun in the hand when the door opened and he came in.

Q. You saw him with a gun in his hand and the door open?

A. Uh-huh.

Q. What were you thinking at that point?

A.  I wasn't.  Like, I just went blank. I just --

Q.  What's the next thing that you recall after seeing him come into the bedroom with a gun?

A.  I just seen fire.

Q.  When you say fire, what do you mean?

A.  Just seen, I guess, gunshots.

Later, to corroborate Ms. Johnson's testimony, Detective Doug Bacon testified as follows:

Q.  And did [Ms. Johnson] tell you what she saw from the bathroom?

A.  She stated that she was standing at the -- in the bathroom, and when she saw her husband pushing on the door, which he finally got open, she stated that her husband entered the room with a gun in his hand.

Q.  And what did she tell you that she saw next?

A.  Ms. Johnson stated that she saw her husband fire the gun in the bedroom, and then she heard her son screaming, at which time she took off running out of the bedroom and ran out into the parking lot looking for him.

Defendant argues that the detective's testimony that Ms. Johnson "saw her husband fire the gun in the bedroom" adds additional information to her trial testimony that she merely saw "fire" or "gunshots" when her husband entered the bedroom

with his gun, and was, therefore, inadmissible to corroborate her testimony. However, "a statement that merely contains additional facts is not automatically barred." *Harrison*, 328 N.C. at 682, 403 S.E.2d at 304. The dispositive question is whether the testimony is sufficiently similar such that it tends to strengthen and add credibility to the witness' testimony. *Id.* at 682-83, 403 S.E.2d at 304.

This test was applied in *State v. Rogers*, 299 N.C. 597, 264 S.E.2d 89 (1980), which we find analogous to this case. In *Rogers*, a passenger in the defendant's vehicle testified at trial that he saw the defendant pull the victim out of the car and onto the bridge, heard someone say, "'Man, . . . don't throw that boy in that cold-ass water'" and then heard a splash. *Id.* at 600, 264 S.E.2d at 91-92. The detective then testified that the witness had told him the defendant threw the victim over the bridge. *Id.*, 264 S.E.2d at 92. Our Supreme Court noted that although the witness never testified that he actually saw the defendant throw the victim over the bridge, "the clear implication of [the witness'] testimony is that defendant did precisely that act." *Id.* at 601, 264 S.E.2d at 92. Further, the fact that the witness "did not mention one act which was clearly a component of a series of interrelated acts does not in any way serve to abridge the probative force of the rest of his

testimony." *Id.* The Court concluded that the detective's testimony was admissible as corroborative evidence because of the substantial similarity of the testimony. *Id.*

Here, as in *Rogers*, the detective's testimony was substantially similar to Ms. Johnson's. The prosecutor's line of questioning focused on what Ms. Johnson had observed with respect to her husband. There were no questions about and no mention of Mr. Farrow at this point in the testimony. Ms. Johnson testified, with respect to her husband, that she saw him enter the room with his gun, and the next thing she saw was "fire" or "gunshots." A reasonable juror could, given the context, infer that Ms. Johnson meant that she saw "fire" or "gunshots" from defendant's gun.

Any additional precision in the detective's testimony regarding Ms. Johnson's out-of-court statement was no different than the added detail in *Rogers*. It amounted to nothing more than what a reasonable juror would have been able to infer from the witness' testimony alone, and, by the same token, tended to add weight and credibility to her testimony. We, therefore, hold that it was admissible corroborative evidence. *See also State v. Lloyd*, 354 N.C. 76, 104, 552 S.E.2d 596, 617 (2001) (holding detective's testimony that witness told him "'Willie shot my mama'" was "an admissible shorthand statement of fact"

corroborating witness' testimony that he "heard defendant and the victim arguing, heard shots, saw the victim bleeding and lying on the porch, and saw defendant fleeing the crime scene").

Even if it were error to admit the statement, it was not prejudicial. Defendant argues that this evidence had a probable impact on the jury's finding of guilt because it was a closely contested case and the out-of-court statement was the only testimony that a witness saw or heard defendant fire his gun. Defendant contends that the out-of-court statement undercut his claims that he fired only after Mr. Farrow began shooting and that he did not intentionally fire his weapon.

However, it was undisputed at trial that defendant in fact fired his gun once, although Mr. Farrow fired his gun five times. Ms. Johnson's out-of-court statement only arguably added that she saw him fire the gun, a fact immaterial to defendant's defense. It indicated neither who fired first nor whether defendant intentionally squeezed the trigger. Indeed, Detective Bacon expressly noted the lack of witnesses regarding who fired first:

> Q. Detective, you were asked as far as whether Orlando Farrow knew who fired first. Does anybody know who fired first?
>
> A. I don't think so. From everything I know of, Ms. Johnson doesn't. She says that she knows that her husband did fire. It's obvious that Mr. Farrow did fire as

well because Mr. Johnson got struck.

Further, the jury was instructed to use Detective Bacon's testimony only to assess the credibility of Ms. Johnson, and Detective Bacon explained at trial that he was testifying based on his report of the incident and that he was not repeating Ms. Johnson's words exactly. "My report is basically a paraphrased statement of what the individual had told me. I can't recall exactly the specifics and therefore do not want to give untruthful testimony in court so therefore I utilize my notes that -- directly what I wrote, not what somebody else has written."

Because (1) the jury knew that the statement was paraphrased by the detective, (2) it did not undermine the defense's theory of how the events occurred, and (3) the jury was instructed to use the evidence only to assess the credibility of Ms. Johnson, we hold that the testimony did not have a probable impact on the jury's finding of guilt.

II

Defendant next argues that the trial court committed plain error in its instruction on the first element of first degree burglary, which required the jury to find beyond a reasonable doubt:

> First, that the defendant broke and entered a dwelling house. A breaking need

> not be actual, that is, the defendant need not physically remove a barrier. The defendant may, by a threat of force, inspire such fear as to induce the occupant to allow entry. In this situation, the defendant would have constructively broke, and such constructive breaking is a sufficient breaking for the purposes of this offense.

Defendant does not contend that this is an incorrect statement of the law. Rather, he argues that this jury instruction was improper because it amounted to both (1) an impermissible opinion by the trial court and (2) a peremptory instruction that an element of the offense had been proven beyond a reasonable doubt.

"In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved . . . ." N.C. Gen. Stat. § 15A-1232 (2013). This prohibition is mandatory. *State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989). Our courts review the totality of the circumstances to determine whether the judge expressed an improper opinion. *State v. Foye*, ___ N.C. App. ___, ___, 725 S.E.2d 73, 81 (2012). "'Whether the judge's language amounts to an expression of opinion is determined by its probable meaning to the jury, not by the judge's motive.'" *Id.* at ___, 725 S.E.2d at 81 (quoting *State v. McEachern*, 283 N.C. 57, 59–60, 194 S.E.2d 787, 789 (1973)).

Defendant contends that instructing the jury that "[i]n this situation, the defendant would have constructively broke" specifically referred to defendant and expressed the trial court's opinion that defendant in fact constructively broke into the apartment. However, "a charge must be construed as a whole, and isolated portions of a charge will not be held to be prejudicial where the charge as a whole is correct and free from objection." *State v. Slade*, 291 N.C. 275, 283, 229 S.E.2d 921, 926 (1976). "'It is not sufficient to show that a critical examination of the judge's words, detached from the context and the incidents of the trial, are capable of an interpretation from which an expression of opinion may be inferred.'" *Id.* (quoting *State v. Gatling*, 275 N.C. 625, 633, 170 S.E.2d 593, 598 (1969)).

When viewed in context, "[i]n this situation" refers to the previous two sentences which state that "[a] breaking need not be actual, that is, the defendant need not physically remove a barrier. The defendant may, by a threat of force, inspire such fear as to induce the occupant to allow entry." In other words, "[i]n this situation" refers to a hypothetical situation where the defendant -- any defendant -- breaks and enters through non-physical means. In that event, "the defendant *would have* constructively broke." (Emphasis added.) The use of "would

have" instead of "has" indicated that the trial court was not referring to defendant specifically, but rather to the law generally.

Additionally, before listing the elements, the judge stated "[f]or you to find the defendant guilty of [first degree burglary], the State must prove five things beyond a reasonable doubt." After stating the elements, he instructed the jury "if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant [committed all the elements of the offense], it would be your duty to return a verdict of guilty of first-degree burglary. If you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty." Finally, the judge stated that "[t]he law requires the presiding judge to be impartial. You should not infer from anything I have done or said that the evidence is to be believed or disbelieved, that a fact has been proved, or what your findings ought to be. It is your duty to find the facts and render a verdict reflecting the truth."

When viewed in context, the judge's instruction regarding first degree burglary did not constitute an improper expression of opinion or amount to an instruction that an element of the offense had been proven beyond a reasonable doubt. Defendant

has, therefore, failed to show any error in the jury instructions.

No error.

Chief Judge MARTIN and Judge STROUD concur.

Report per Rule 30(e).