IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-821

Filed 6 August 2024

Cleveland County, Nos. 21 CRS 52839; 22 CRS 871

STATE OF NORTH CAROLINA

v.

RUSTY RYAN ANDERSON, Defendant.

Appeal by Defendant from judgment entered 3 February 2023 by Judge W. Todd Pomeroy in Cleveland County Superior Court. Heard in the Court of Appeals 17 April 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Tracy Nayer, for the State.*

*Phoebe W. Dee, for Defendant-Appellant.*

CARPENTER, Judge.

Rusty Ryan Anderson ("Defendant") appeals from judgment after a jury convicted him of one count of statutory sexual offense with a child by an adult and one count of taking indecent liberties with a child. On appeal, Defendant argues the trial court erred by: (1) admitting Dr. Calabro's testimony; (2) admitting Christopher Anderson's testimony; and (3) failing to intervene *ex mero motu* during the State's closing argument. After careful review, we discern no prejudicial error.

## I. Factual & Procedural Background

On 2 August 2021, a grand jury indicted Defendant for three counts of statutory sexual offense with a child by an adult. On 10 October 2022, a grand jury indicted Defendant for three counts of taking indecent liberties with a child. These charges alleged the victims to be Lana and Anna,[1] Defendant's daughters. The State began trying Defendant on 30 January 2023 in Cleveland County Superior Court, and trial evidence tended to show the following.

Teresa Vick, a social worker for the Cleveland County Department of Social Services, investigated sexual-abuse allegations made against Defendant. Lana told Vick that Defendant "put his finger in her and did it to [Anna]. [Lana] stated that [Defendant] put his finger in [her] front privates, but it was a long time ago when [she] was four." Lana told Vick that Defendant did the same to Anna when she was three years old.

Vick also spoke with Anna and asked her if anyone ever touched her between her legs. Anna said "yes" and "pointed to her back—her bottom and said, '[Defendant] put his finger in my butt,' and she told—and she told her mommy. And then she said he put his finger in her butt again, and her mommy kicked [Defendant] out."

Anna testified and described how Defendant "touched [her] no-no spot," which is "[s]omething really bad," and "where [she] pee[s]," and said that "[i]t hurt" and "made [her] body feel bad." Lana also testified that she was in the room and saw

---

[1] We use pseudonyms to protect the identity of the juveniles. *See* N.C. R. App. P. 42(b).

Defendant touch Anna in her "no-no spot," and that his finger made Anna's clothes rise up "like when you pull them up."

Dr. Michelle Calabro, a pediatrician, examined both Lana and Anna at the Children's Advocacy Center of Cleveland County. The State tendered Dr. Calabro as "an expert in the field of pediatrics with a concentration in child maltreatment." Dr. Calabro first testified about her examination of Lana. Dr. Calabro's examination of Lana was "a medical exam." In these examinations, Dr. Calabro "treat[s] it as an expanded medical exam like you would receive in the office." These examinations include an "interview."

Concerning recommended treatments after these examinations, Dr. Calabro "usually recommend[s] when kids have gone through a traumatic event such as something like sexual abuse or even changes in family, where they live, [she] recommend[s] some counseling. [She] do[es] typically like the trauma-focused cognitive therapy." The challenged portion of Dr. Calabro's testimony includes the following:

> **The State**: Did you interview [Lana] alone, as is your habit?
> **Dr. Calabro**: I did.
> **The State**: What did [Lana] tell you about why she was there for the exam that day?
>     . . . .
> **Dr. Calabro**: You know, we started off traditionally that, you know, she was, you know, in second grade and at school she was an A student, and it was actually advanced. When she said—when I got kind of to the specifics of why she was

> here, she did say that "Dad"—and she identified "Dad" as
> [Defendant]—
> **Defense Counsel**: Objection to the hearsay.
> **The State**: Your Honor, I would contend, A, that it's not
> hearsay; that it's substantive evidence; the statement was
> made for the purposes of medical diagnosis and treatment
> and admissible for that purpose.
> **Trial Court**: All right. It's overruled. You may continue.
> **The State**: Go ahead.
> **Dr. Calabro**: She said that he touched [Anna] in what she
> called the no-no spot.

Dr. Calabro then discussed Anna's examination. Anna told Dr. Calabro that Defendant touched her "no-no spot" with his finger and pointed to her genital area as her "no-no spot." Anna told Dr. Calabro that Defendant "touched it" two times and said that Defendant would "touch it when [s]he was taking a bath." Anna told Dr. Calabro that Defendant "touched both no-no spots, meaning the front and the back," said that Defendant "put his finger inside her bottom," and said that "it hurt and made it bleed." Anna told Dr. Calabro that Defendant "touched her sister as well."

Defendant's half brother, Christopher Anderson, testified about events concerning Defendant and Christopher's daughter, Hailie, when she was five years old:

> **The State**: How did you find out about that?
> **Christopher**: I was told by Skylar.
> **The State**: And what did Skylar tell you?
> **Christopher**: That—
> **Defense Counsel**: Objection to the hearsay.
> **Christopher**: —she was—
> **Trial Court**: Hold on.
> **The State**: Hold on one second.

**Trial Court**: The objection is overruled.  It's being offered to corroborate, as the previous instruction indicated.  You may continue.

First, "Skylar" is Christopher's stepsister.  Second, the trial court's "previous instruction" was as follows:

> when evidence has been received tending to show that an earlier time a witness made a statement which may be consistent or may conflict with the testimony at this trial, you must not consider such earlier statement.  You are simply examining whether or not the statement is consistent, corroborates or impeaches the testimony of another witness.  You're only to use it for that purpose.

Christopher then testified that Skylar told him that "she had witnessed [Defendant] do inappropriate things" to Hailie.  After hearing this, Christopher reported Defendant to the Lincoln County Sheriff's Office.  Skylar did not testify at trial.

Hailie, who was nineteen years old during trial, testified that Defendant, her uncle, sexually assaulted her when she was five years old.  Hailie said that she and Defendant were on the couch at her grandparents' house when Defendant "put his hands in [her] pants and did put a finger in [her] vagina."  When asked what made Defendant stop touching her, Hailie said: "I don't really remember.  I know Skylar was there."  Defendant did not object to this testimony.

The State entered State's Exhibit 4 into evidence without objection.  State's Exhibit 4 was a statement written by Defendant; Defendant wrote the statement in

the Lincoln County Sheriff's Office on 5 March 2009, after Christopher reported Defendant's abuse.

In the signed statement Defendant recounted, among other things: "I put my hands inside Hailie's pants and touched Hailie's vagina. I put my finger inside her vagina a little. The next thing I remember, Skylar was coming around the corner. I knew she saw me, but she didn't say anything to me." Defendant continued: "I touched Hailie one other time with my hand on the outside of her vagina, but I don't remember when. I don't know why I did these things, but I need some help. I'm sorry to everybody."

Defendant offered no evidence.

During the State's closing argument, the prosecutor explained to the jury that evidence "about someone's past" is called "404(b) evidence." The prosecutor posed the following rhetorical questions to the jury:

> So why is it that it matters if [Defendant] stuck his finger in his five-year-old niece in her no-no spot, what she called her private? Why does it matter if he licked the vagina of his four-year-old niece . . . years ago? What does that tell you about whether he did something to [Anna] when she was five years old or three or four? What does that tell you?

The prosecutor continued:

> Well, it's something that in fact does help you make that determination. The best predictor of future behavior is past behavior. One of the things that tells you what—how somebody acts is some things that they've done in the past. Now, you don't convict somebody of something just because they've been in trouble in the past, but you look at the

circumstances of what they've done in the past and see if they help you see a pattern, a common scheme, if they help you determine what somebody's intent is.

Defendant did not object to the State's closing argument.

On 3 February 2023, the jury convicted Defendant of one count of statutory sexual offense with a child by an adult and one count of taking indecent liberties with a child. The trial court sentenced Defendant to one term of between 339 and 467 months of imprisonment, followed by a consecutive term of between 25 and 39 months of imprisonment. The trial court also ordered Defendant to register as a sex offender for the rest of his life, and if Defendant is ever released, to enroll in satellite-based monitoring for ten years after his release. Defendant gave oral notice of appeal in open court.

## II.    Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III.    Issues

The issues on appeal are whether the trial court erred by: (1) admitting Dr. Calabro's testimony; (2) admitting Christopher Anderson's testimony; and (3) failing to intervene *ex mero motu* during the State's closing argument.

## IV.    Analysis

### A. Dr. Calabro's Testimony

On appeal, Defendant first argues that the trial court erred by allowing Dr. Calabro to testify about an out-of-court statement made by Lana. But before

addressing the merits of Defendant's argument, we must address the State's assertion that Defendant failed to preserve this argument.

"No particular form is required in order to preserve the right to assert the alleged error upon appeal if the motion or objection clearly presented the alleged error to the trial court . . . ." N.C. Gen. Stat. § 8C-1, Rule 103(a)(1) (2023); *see also* N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

Here, while testifying about her examination of Lana, Dr. Calabro stated that "[Lana] did say that 'Dad'—and she identified 'Dad' as [Defendant]." Defendant's counsel then "[o]bject[ed] to the hearsay." This objection "clearly presented the alleged error"—that Dr. Calabro's testimony was hearsay—and the objection clearly concerned Dr. Calabro's recitation of Lana's statements. *See* N.C. Gen. Stat. § 8C-1, Rule 103(a)(1). Therefore, Defendant's hearsay argument concerning Dr. Calabro's testimony is preserved for our review. *See id.*

We review a trial court's hearsay rulings de novo. *State v. Miller*, 197 N.C. App. 78, 87–88, 676 S.E.2d 546, 552 (2009). Under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008)

(quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2023). Said another way, hearsay is "(1) an out-of-court statement (2) offered for proof of the matter asserted." *State v. Kelly*, 75 N.C. App. 461, 465, 331 S.E.2d 227, 231 (1985). Hearsay is generally inadmissible. N.C. Gen. Stat. § 8C-1, Rule 802 (2023).

There are exceptions, however, to the general exclusion of hearsay. *See, e.g.*, N.C. Gen. Stat. § 8C-1, Rule 803(4) (2023). Under Rule 803(4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are "not excluded by the hearsay rule." *Id.*

Put differently, "Rule 803(4) requires a two-part inquiry: (1) whether the declarant's statements were made for purposes of medical diagnosis or treatment; and (2) whether the declarant's statements were reasonably pertinent to diagnosis or treatment." *State v. Hinnant*, 351 N.C. 277, 284, 523 S.E.2d 663, 667 (2000) (citing *State v. Aguallo,* 318 N.C. 590, 595–97, 350 S.E.2d 76, 80–81 (1986)). But Rule 803(4) does not apply to all declarants: It is "quite clear that only the statements of the

person being diagnosed or treated are excepted from the prohibition against hearsay."

*State v. Jones*, 339 N.C. 114, 146, 451 S.E.2d 826, 842 (1994).

Here, Dr. Calabro testified about her examination of Lana, and the challenged

portion of Dr. Calabro's testimony includes the following:

> **State**: Did you interview [Lana] alone, as is your habit?
> **Dr. Calabro**: I did.
> **State**: What did [Lana] tell you about why she was there for the exam that day?
>       . . . .
> **Dr. Calabro**: You know, we started off traditionally that, you know, she was, you know, in second grade and at school she was an A student, and it was actually advanced. When she said—When I got kind of to the specifics of why she was here, she did say that "Dad"—and she identified "Dad" as [Defendant]—
> **Defense Counsel**: Objection to the hearsay.
> **State**: Your Honor, I would contend, A, that it's not hearsay; that it's substantive evidence; the statement was made for the purposes of medical diagnosis and treatment and admissible for that purpose.
> **Trial Court**: All right. It's overruled. You may continue.
> **Dr. Calabro**: She said that [Defendant] touched [Anna] in what she called the no-no spot.

First, Dr. Calabro's testimony concerning Lana's statement about Anna was

hearsay. Lana made this statement out of court because she made it at the Children's

Advocacy Center of Cleveland County. *See* N.C. Gen. Stat. § 8C-1, Rule 801(c). And

because the State tried to admit the testimony under an exception to hearsay, the

State was attempting to offer it for the truth of the matter asserted. *See id*. § 8C-1,

Rule 803. Put another way: The statement was offered for its truth because if it was

not, it would not be hearsay—and if the statement was not hearsay, offering it as an

*exception* to hearsay would be pointless. *See id.* Therefore, Dr. Calabro's testimony about Lana's statement concerning Anna was hearsay because Lana made the statement out of court, and the State offered it for the truth of the matter asserted. *See Kelly*, 75 N.C. App. at 465, 331 S.E.2d at 231.

Nonetheless, the trial court properly admitted Lana's statement under Rule 803(4). Lana's challenged statement, however, involved Anna, which raises a concern: Perhaps Lana's statement was not made by "the person being diagnosed or treated," thus making Rule 803(4) inapplicable. *See Jones*, 339 N.C. at 146, 451 S.E.2d at 842. At first glance, Lana's statement about what happened to *Anna* seems irrelevant to a medical diagnosis of *Lana*. *See id.* at 146, 451 S.E.2d at 842. From there, it follows that in order for Lana's statement about Anna to be "reasonably pertinent to diagnosis or treatment," the diagnosis or treatment must have been for Anna. *See Hinnant*, 351 N.C. at 284, 523 S.E.2d at 667. Otherwise, the hearsay is barred under *Jones* because it was not made by "the person being diagnosed or treated." *See Jones*, 339 N.C. at 146, 451 S.E.2d at 842.

But this concern is misplaced, as Lana was indeed the person being diagnosed. Dr. Calabro, "an expert in the field of pediatrics with a concentration in child maltreatment," examined Lana. Dr. Calabro's examination of Lana was "a medical exam," which Dr. Calabro "treat[s] . . . as an expanded medical exam like you would receive in the office." These examinations include an interview.

Concerning common follow-up treatments, Dr. Calabro "usually recommend[s] when kids have gone through a traumatic event, such as something like sexual abuse or even changes in family, where they live, [she] recommend[s] some counseling. [She] do[es] typically like the trauma-focused cognitive therapy." In other words, Dr. Calabro's exams are not limited to physical examination. Rather, as illustrated by her interview process and her recommended counseling, Dr. Calabro also examines a patient's mental health.

Accordingly, Lana's statement about Anna was "made for purposes of medical diagnosis or treatment," *see Hinnant*, 351 N.C. at 284, 523 S.E.2d at 667, because Lana made the statement during her own medical exam, which was not limited to physical examination. And Lana's statement was "reasonably pertinent to diagnosis," *see id.* at 284, 523 S.E.2d at 667, because her statement concerned an eyewitness account of her sister's sexual abuse, which undoubtedly affected Lana's mental health.

Therefore, as stated above, the trial court properly admitted Lana's statement under Rule 803(4) because Lana was "the person being diagnosed or treated," *see Jones*, 339 N.C. at 146, 451 S.E.2d at 842, and her statement was "made for purposes of medical diagnosis" and was "reasonably pertinent to diagnosis," *see Hinnant*, 351 N.C. at 284, 523 S.E.2d at 667.

**B. Skylar's Statements**

Next, Defendant argues that the trial court erred by allowing Christopher to testify about out-of-court statements made by Skylar. In sum, we agree with Defendant; the trial court erred. Nonetheless, Defendant was not prejudiced by this error because he waived any objection to Christopher's testimony.

As detailed above, hearsay is "(1) an out-of-court statement (2) offered for proof of the matter asserted." *Kelly*, 75 N.C. App. at 465, 331 S.E.2d at 231. A witness's out-of-court statements offered to corroborate his own testimony, however, is not offered "for the truth of the matter asserted." *See, e.g.*, *State v. Holden*, 321 N.C. 125, 143, 362 S.E.2d 513, 526 (1987) ("Prior consistent statements made by a witness are admissible for purposes of corroborating the testimony of that witness, if it does in fact corroborate his testimony."); *State v. Harrison*, 328 N.C. 678, 681, 403 S.E.2d 301, 303 (1991) ("A witness's prior consistent statements may be admitted to corroborate the witness's courtroom testimony.").[2]

"Corroboration is the process of persuading the trier of the facts that a witness is credible." *State v. Ramey*, 318 N.C. 457, 468, 349 S.E.2d 566, 573 (1986) (quoting

[2] A similar rule is codified in the Federal Rules of Evidence. *See* Fed. R. Evid. 801(d)(1)(B) (explaining that a statement is "not hearsay" if the "declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is consistent with the declarant's testimony and is offered . . . to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying"). The General Assembly has not codified our corroboration rule, however. *See* N.C. Gen. Stat. §§ 8C-1, Rules 801–06. Rather, our corroboration rule, concluding that an out-of-court statement offered to corroborate testimony is not offered for the "truth of the matter asserted," is a creature of caselaw. *See State v. Tellez*, 200 N.C. App. 517, 526, 684 S.E.2d 733, 739–40 (2009). How a statement can be offered to "corroborate," yet not be offered for its truth, is unclear. Nonetheless, we are bound by stare decisis. *See In re Civ. Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

*State v. Riddle*, 316 N.C. 152, 156–57, 340 S.E.2d 75, 77–78 (1986)). "Prior consistent statements of a witness are admissible as corroborative evidence even when the witness has not been impeached." *Id.* at 468, 349 S.E.2d at 573 (quoting *Riddle*, 316 N.C. at 156–57, 340 S.E.2d at 77–78).

Here, Christopher testified about what Defendant did to Hailie when she was five years old. The relevant testimony is as follows:

> **The State**: How did you find out about that?
> **Christopher**: I was told by Skylar.
> **The State**: And what did Skylar tell you?
> **Christopher**: That—
> **Defense Counsel**: Objection to the hearsay.
> **Christopher**: —she was—
> **Trial Court**: Hold on.
> **The State**: Hold on one second.
> **Trial Court**: The objection is overruled. It's being offered
> to corroborate, as the previous instruction indicated. You
> may continue.

Christopher then testified that Skylar told him that "she had witnessed [Defendant] do inappropriate things" to Hailie. After hearing this, Christopher reported Defendant to the Lincoln County Sheriff's Office.

Christopher testified about Skylar's out-of-court statement, and the trial court admitted Christopher's testimony "to corroborate." But the out-of-court statement offered for corroboration was made by Skylar. Skylar, though, did not testify at trial. Because Syler did not testify at trial, there was nothing for her to corroborate: "A witness's prior consistent statements may be admitted to corroborate the witness's *courtroom testimony*." *See Harrison*, 328 N.C. at 681, 403 S.E.2d at 303 (emphasis

- 14 -

added).  Skylar did not give courtroom testimony, so her out-of-court statements could not be offered to corroborate.  *See id.* at 681, 403 S.E.2d at 303.  Accordingly, the trial court erred by admitting testimony about Skylar's out-of-court statements.

The State, however, argues that Defendant waived any objection to Christopher's testimony about Skylar's statements because the State properly admitted, without objection, other evidence that supported Skylar's statements to Christopher.  For this argument, the State points to two pieces of evidence: (1) Hailie's testimony that she "kn[e]w Skylar was there" when Defendant sexually assaulted her; and (2) State's Exhibit 4, in which Defendant admitted to sexually assaulting Hailie, and that "[Skylar] saw [him], but she didn't say anything to [him]."

"Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost."  *State v. Anthony*, 354 N.C. 372, 409, 555 S.E.2d 557, 582 (2001) (quoting *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995)).  "It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character."  *State v. Hudson*, 331 N.C. 122, 151, 415 S.E.2d 732, 747–48 (1992) (quoting *State v. Campbell*, 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979)).

Here, the trial court erred by admitting the following testimony from Christopher: that Skylar told him that "she had witnessed [Defendant] do inappropriate things" to Hailie.  But Defendant did not object to Hailie's own

- 15 -

testimony—in which she testified that she "kn[e]w Skylar was there" when Defendant sexually assaulted her. Further, Defendant did not object to State's Exhibit 4, in which he admitted to sexually assaulting Hailie, and that "[Skylar] saw [him], but she didn't say anything to [him]."

Both Hailie's testimony and State's Exhibit 4 are "of a similar character" to Christopher's challenged testimony. *See Hudson*, 331 N.C. at 151, 415 S.E.2d at 747–48. Indeed, Hailie's testimony and State's Exhibit 4 support the same proposition as Christopher's challenged testimony: Defendant sexually assaulted Hailie, and Skylar witnessed the assault. Therefore, despite the trial court's error, Defendant waived any objection to Christopher's challenged testimony concerning Skylar. *See Anthony*, 354 N.C. at 409, 555 S.E.2d at 582.

## C. The State's Closing Argument

In his final argument, Defendant asserts that the trial court erred by failing to intervene *ex mero motu* during the State's closing argument. We disagree.

"The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*."[3] *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002)

---

[3] *Ex mero motu* is analogous to sua sponte. A court intervenes *ex mero motu* when it does so "voluntarily," without prompting from counsel. *Ex mero motu*, BLACK'S LAW DICTIONARY (11th ed. 2019).

(citing *State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998)). "[I]n order to constitute reversible error, the prosecutor's remarks must be both improper and prejudicial." *Id.* at 133, 558 S.E.2d at 107–08.

To establish prejudice, "the defendant must show that there is a reasonable possibility that the jury would have acquitted him had the challenged argument not been permitted." *State v. Fletcher*, 370 N.C. 313, 320, 807 S.E.2d 528, 534 (2017) (citing *State v. Ratliff*, 341 N.C. 610, 617, 461 S.E.2d 325, 329 (1995)). To clear the prejudice hurdle, a defendant must overcome the presumption that juries follow a trial court's legal instructions. *See State v. Prevatte*, 356 N.C. 178, 254, 570 S.E.2d 440, 482 (2002) (quoting *State v. McCarver*, 341 N.C. 364, 384, 462 S.E.2d 25, 36 (1995)) ("Jurors are presumed to follow a trial court's instructions.").

"As a general proposition, parties are given wide latitude in their closing arguments to the jury, with the State being entitled to argue to the jury the law, the facts in evidence and all reasonable inferences drawn therefrom." *Fletcher*, 370 N.C. at 319, 807 S.E.2d at 534 (*purgandum*). Nonetheless, incorrect statements of law are improper. *Id.* at 319, 807 S.E.2d at 534.

Defendant's specific claim concerning the State's closing argument is that the prosecutor incorrectly explained Rule 404(b) to the jury. Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023). But Rule 404(b) allows evidence of "[o]ther crimes, wrongs,

or acts" for purposes other than to show the defendant "acted in conformity therewith." *Id.* Such purposes include attempting to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.*

Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278–79, 389 S.E.2d 48, 54 (1990). "[Rule 404(b) evidence] 'is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime.'" *State v. Davis*, 239 N.C. App. 522, 532, 768 S.E.2d 903, 910 (2015) (alteration in original) (quoting *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012)).

Here, during the State's closing argument, the prosecutor explained to the jury that evidence "about someone's past" is called "404(b) evidence." The prosecutor posed the following rhetorical questions to the jury:

> So why is it that it matters if [Defendant] stuck his finger in his five-year-old niece in her no-no spot, what she called her private? Why does it matter if he licked the vagina of his four-year-old niece . . . years ago? What does that tell you about whether he did something to [Anna] when she was five years old or three or four? What does that tell you?

The prosecutor continued:

> Well, it's something that in fact does help you make that determination. The best predictor of future behavior is past behavior. One of the things that tells you what—how somebody acts is some things that they've done in the past. Now, you don't convict somebody of something just because they've been in trouble in the past, but you look at the circumstances of what they've done in the past and see if they help you see a pattern, a common scheme, if they help you determine what somebody's intent is.

The prosecutor attempted to align her closing with Rule 404(b) by telling the jury that they could "look at the circumstances of what [Defendant has] done" in order to "see a pattern, a common scheme," or "determine what [Defendant's] intent [was]." And under our caselaw, Rule 404(b) is indeed a "general rule of inclusion," *see Coffey*, 326 N.C. at 278–79, 389 S.E.2d at 54, allowing evidence of a prior act so "long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime," *see Davis*, 239 N.C. App. at 532, 768 S.E.2d at 910.

Nonetheless, the prosecutor erred when she said: "The best predictor of future behavior is past behavior. One of the things that tells you what—how somebody acts is some things that they've done in the past." This is the exact propensity purpose prohibited by Rule 404. *See* N.C. Gen. Stat. § 8C-1, Rule 404(b). Therefore, the prosecutor's closing argument here was improper. *See Fletcher*, 370 N.C. at 319, 807 S.E.2d at 534. The next question, then, is whether the prosecutor's closing remarks were prejudicial. *See Jones*, 355 N.C. at 133, 558 S.E.2d at 107–08.

First, Defendant must rebut the presumption that the jury followed the trial court's legal instructions, which Defendant does not challenge. *See Prevatte*, 356 N.C.

at 254, 570 S.E.2d at 482. Second, Defendant must counter the ample evidence in this case. Social worker Teresa Vick testified that Lana and Anna told Vick about Defendant's repeated sexual abuse. Further, Dr. Calabro testified about the same. And indeed, both Lana and Anna, themselves, testified about Defendant's repeated sexual abuse. Defendant, who admittedly "need[s] some help," offered no evidence at trial. Considering the State's evidence of guilt, and Defendant's dearth of evidence to the contrary, there is not a "reasonable possibility that the jury would have acquitted him had the challenged argument not been permitted." *See Fletcher*, 370 N.C. at 320, 807 S.E.2d at 534.

In sum, although the prosecutor's closing argument was improper, Defendant has failed to show that he was prejudiced by it. *See Jones*, 355 N.C. at 133, 558 S.E.2d at 107–08. Accordingly, the trial court did not err by failing to intervene *ex mero motu* during the State's closing argument. *See id.* at 133, 558 S.E.2d at 107.

## V. Conclusion

We conclude that the trial court did not err by admitting Dr. Calabro's testimony, that Defendant waived his argument concerning Christopher's testimony, and that, although the State's closing was improper, the trial court did not err by failing to intervene *ex mero motu*.

NO PREJUDICIAL ERROR.

Judges WOOD and GORE concur.